IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNY JO WAGNER,  )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 15-557 |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 9th day of September, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 18) be, and the same hereby is, granted, and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

AO 72
(Rev. 8/82)

Plaintiff protectively filed her pending application for disability insurance benefits on September 24, 2011, alleging a disability onset date of September 8, 2011, due to the effects of a stroke, high blood pressure, high cholesterol and gastro-esophageal reflux disease (GERD). Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on September 4, 2013, at which plaintiff, represented by counsel, appeared and testified. On October 18, 2013, the ALJ issued a decision finding that plaintiff is not disabled. On February 25, 2015, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 55 years old at the time on her alleged onset date and is classified as a person of advanced age under the regulations. 20 C.F.R. §404.1563(e). She has at least a high school education and has past relevant work experience as a cashier and an inspector/hand packager, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of status post-cerebrovascular accident (stroke), transient cerebral ischemia, obesity and depressive disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the light exertional level but with numerous restrictions necessary to accommodate her

physical and mental impairments.[1] Comparing plaintiff's residual functional capacity with the physical and mental demands of her past relevant work, and relying on the vocational expert's testimony that her past relevant work positions of cashier and inspector/hand packager both were unskilled and light, the ALJ found that plaintiff is capable of performing her past relevant work as it is actually and generally performed. (R. 24). Accordingly, the ALJ concluded at step 4 of the sequential evaluation process that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R.

---

[1] Specifically, the ALJ determined that plaintiff has the residual functional capacity to perform light work except "she can never climb a ladder, rope, or scaffold; can never crawl; can only occasionally push, pull, or operate foot controls with the lower extremities; can only occasionally climb ramps and stairs; can only occasionally balance, stoop, kneel, or crouch; must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; and is limited to a low stress work environment, which means no production rate pace work, but, rather, goal-oriented work with only occasional and routine change in work setting." (R. 17)

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §404.1520a.

AO 72
(Rev. 8/82)

§404.1520. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises two challenges to the ALJ's finding that she is not disabled: (1) the ALJ improperly found at step 3 that she does not have a physical or mental impairment which meets or equals the criteria of any listed impairment; and, (2) the ALJ's residual functional capacity finding that plaintiff can perform light work with exceptions is erroneous because it is based on the ALJ's improper evaluation of the evidence. Upon review, the court is satisfied that the ALJ correctly evaluated all of the evidence under the appropriate standards and that all of the ALJ's findings at every step of the sequential evaluation process are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred at step 3 of the sequential evaluation process in finding that plaintiff's impairments do not meet or equal Listing 11.04 (central nervous system vascular accident), Listing 12.02 (organic mental disorders) and/or Listing 12.04 (affective disorders). This argument is without merit as substantial evidence supports the ALJ's step 3 finding.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1520(d). "If the impairment is equivalent to a listed impairment then [the claimant] is *per se* disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairments in the federal regulations that compare with the claimant's impairments and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. However, the claimant has the burden to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, the ALJ correctly identified Listing 11.04 as the listing corresponding to the effects of plaintiff's stroke, and Listings 12.02 and 12.04 as those corresponding to plaintiff's mental impairments, and he adequately explained his reasoning as to why plaintiff's impairments do not meet or equal any of those listings. (R. 15-16).

As to Listing 11.04, the ALJ determined that the medical evidence fails to establish that, more than 3 months after her stroke, plaintiff had either "sensory or motor aphasia resulting in *ineffective* speech or communication" or "[s]*ignificant* and *persistent* disorganization of motor function in two extremities, resulting in *sustained* disturbance of gross and dexterous movements, or gait and station." (R. 15) (emphasis added). The ALJ's finding that the lingering effects of plaintiff's stroke do not meet or equal the listing at 11.04 is supported by substantial evidence as referenced by the ALJ in the decision. (R. 15; 18-23).

Initially, there is no medical evidence in the record suggesting that plaintiff suffered from *ineffective* speech or communication. To the contrary, at the time of her admission to inpatient stroke rehabilitation on September 13, 2011, a few days after her stroke, it was reported that plaintiff was able to speak clearly, but with a "very slight" slur. (R. 310). One month later, a speech evaluation showed no word retrieval difficulties during conversational

speech and no difficulties communicating with others, (R. 476), and by November 1, 2011, plaintiff was able to "express complex ideas, feelings and needs clearly, completely, and easily without observable impairment." (R. 413) Although records from Butler Memorial Hospital show that plaintiff reported "somewhat slurred speech" on August 2, 2013, (R. 938), at an evaluation at Mars Medical Center less than a week later, on August 8, 2013, plaintiff's speech was noted to be "clear." (R. 993). Thus, there simply is no objective medical evidence in the record that plaintiff's communication or speech was ineffective at any time.

Likewise, the medical evidence fails to show *significant* and *persistent* disorganization of motor function in two extremities that resulted in *sustained* disturbance of gross and dexterous movements, or gait and station.[3] The ALJ exhaustively discussed the medical evidence relating to plaintiff's difficulties with balance and walking in his decision, (R. 18-23), and this evidence requires only a brief highlighting here.

In particular, the ALJ acknowledged that immediately after her stroke in September that plaintiff required "maximum assistance" upon admission to inpatient rehabilitation and that upon discharge she was able to "perform gait with total assistance" and was instructed that she "should use a wheeled walker." (R. 536). However, by October 2011, plaintiff had made progress with her gait training to the extent she was "indep[endent] with mobility with cane on uneven ground." (R. 447). By November 2011, just two months after her stroke, treatment records indicate that "with the use of a one-handed device (e.g., cane, single crutch, hemi-

---

[3] Section 11.00C provides that "persistent disorganization of motor function" may take the form of "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations" and further instructs that "the assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms."

AO 72
(Rev. 8/82)

walker" plaintiff was able to "independently walk on even and uneven surfaces and negotiate stairs with or without railings." (R. 419).

By December of 2011, neurologist Dr. Ashutosh Jadhav reported that plaintiff was able to stand and walk without assistance and she had grossly intact sensation, intact reflexes and full strength in her upper and lower extremities. (R. 514-15). By January of 2012, plaintiff reported that she no longer was using a cane in her home but only was using it for long walks to assist with balance, and further that her neurologist had told her she could discontinue the use of a cane "when she feels ready." (R. 533). A consultative examination report from Dr. C. Golla in March 2012 indicated that plaintiff's "gait is normal," that she "walks slowly without a cane" and that she uses a cane "for fear of dizziness and being unsteady." (R. 525).

Although plaintiff experienced a "likely vertebral basilar insufficiency" in August of 2013 that caused some temporary difficulty walking, the medical evidence establishes that her difficulty was not *sustained* as required under Listing 11.04B. Office treatment notes from Mars Medical Center on August 8, 2013, reflect that plaintiff had "no weakness to her right side" and that while she was using a walker, "her balance and her gait [are] stable even without the walker," which she was using "as precautionary." (R. 992). A physical examination that day also showed that plaintiff had no focal or sensory deficits and had 5/5 strength in both upper and lower extremities. (R. 993).

Although plaintiff complained of persistent dizziness and gait instability and the continued need for a walker, the ALJ noted that her allegations were not substantiated by the objective medical findings.[4] (R. 20). Based on that objective evidence, as outlined by the ALJ

---

[4] While plaintiff does not challenge explicitly the ALJ's credibility determination in this appeal, the court nevertheless finds no error in the ALJ's evaluation of plaintiff's subjective allegations of her limitations. As required under the Regulations, the ALJ properly considered plaintiff's subjective statements in light of the objective medical evidence as well as all of the other factors relevant to plaintiff's

in his decision, the court is satisfied that the ALJ's finding that plaintiff did not have *significant* and *persistent* disorganization of motor function resulting in *sustained* disturbance of gross and dexterous movements, or gait and station, is supported by substantial evidence.

As to plaintiff's mental impairments, substantial evidence likewise supports the ALJ's determination that plaintiff failed to meet the "B" criteria of Listing 12.02 and 12.04.[5] The "B" criteria of listing 12.02 and 12.04 are identical and require that a claimant's mental impairment must result in at least <u>two</u> of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or, 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.02B and 12.04B. (emphasis added).[6]

Here, the ALJ reviewed the evidence and determined that plaintiff's mental impairments result in <u>mild</u> restrictions in activities of daily living; <u>mild</u> difficulties in maintaining social

---

symptoms as set forth in 20 C.F.R. §404.1529(c). *See also* SSR 96-7p. The ALJ did a thorough job in his decision explaining why plaintiff's statements concerning "the intensity, persistence and limiting effects" of her symptoms are "not entirely credible," (R. 17-18), and his evaluation is supported by substantial evidence as outlined in his decision. (R. 18-24).

[5] Listings 12.02 and 12.04 provide that the "required level of severity ... is met [only] when *both* the A and B criteria are satisfied, *or* when the C criteria are met," (emphasis added). The ALJ also found that plaintiff does not meet the "C" criteria of either Listing 12.02 or 12.04. (R. 16). Plaintiff does not challenge that finding.

[6] Under the Regulations, the ALJ is to rate the degree of a claimant's functional limitation "based on the extent to which [the] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §404.1520a(c)(2). With regard to the functional areas of activities of daily living, social functioning and concentration, persistence or pace, a five-point scale is used to rate the degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §404.1520a(c)(4). A "marked" limitation under the Regulations means "more than moderate but less than extreme." 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C). The "assessment of functional limitations is a complex and highly individualized process that requires [consideration] of multiple issues and all relevant evidence to obtain a longitudinal picture of [the] overall degree of functional limitation." 20 C.F.R. §404.1520a(c)(1).

functioning; <u>moderate</u> difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration. (R. 15-16). Because plaintiff's mental impairments do not result in marked limitations in at least two areas, or one marked limitation in one area along with repeated episodes of decompensation, each of extended duration, the ALJ correctly found that plaintiff does not meet the "B" criteria of 12.02 or 12.04.

Although plaintiff now contends that she has "marked" limitations in all three areas of activities of daily living, social functioning and concentration, persistence or pace,[7] she points to no specific objective medical evidence in the record that would support such a finding. Moreover, no treating or examining medical source indicated that plaintiff has "marked" restrictions or difficulties in any area, nor that she meets or equals either Listing 12.02 or 12.04.

Upon review of the record, this court is satisfied that the ALJ adequately explained why he found that plaintiff has mild limitations in activities of daily living, mild difficulties in social functioning, and no more than moderate limitations in concentration, persistence and pace, and that his finding is supported by substantial evidence as outlined in his decision.

Because plaintiff does not have marked limitations in any functional area, the ALJ correctly found that she does not meet the "B" criteria of either Listing 12.02 and 12.04. The ALJ has the final responsibility for determining whether a plaintiff's impairments meet or equal the requirement of a listing, 20 C.F.R. §404.1527(d)(2), and it is not this court's function to re-weigh the evidence in rating the degree of functional limitations in the relevant areas. This court's task merely is to determine whether the ALJ's ratings are supported by substantial evidence, and is satisfied that they are in this case.

---

[7] Plaintiff clearly has not had repeated episodes of decompensation, each of extended duration. Under the Regulations, the term "repeated episodes of decompensation, each of extended duration" means three episodes in one year, or an average of once every four months, each lasting for at least 2 weeks. 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C)(4).

At step 3, it was plaintiff's burden to present medical findings equal in severity to a relevant listed impairment. *See* Sullivan v. Zebley, 493 U.S. 521, 531 (1990). Plaintiff failed to meet that burden here. Accordingly, the court is satisfied that the ALJ's step 3 finding is in accordance with the applicable regulations and that it is supported by substantial evidence.

Plaintiff's remaining argument is that the ALJ's residual functional capacity ("RFC") finding[8] that plaintiff can perform light work with enumerated exceptions is based on the ALJ's improper evaluation of the medical evidence. Plaintiff avers that the ALJ focused on only "selected portions" of the medical evidence and misinterpreted, misquoted or ignored other portions. Upon review, this court is satisfied that the ALJ properly evaluated the medical evidence and that his RFC finding is supported by substantial evidence.

Under the Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.927(c). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §404.1527(d); SSR 96-5p.

---

[8] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §404.1545(a)(1). It is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(3)-(4); SSR 96-8p. The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ thoroughly addressed and discussed, over the course of six pages of his decision, all of the opinions from all of the relevant medical sources and more than adequately explained his reasons for the weight he was giving to all of it. (R. 18-23). Based upon his consideration of all of the pertinent medical evidence, the ALJ concluded that although plaintiff "has experienced some ongoing physical and cognitive limitations," the objective medical evidence fails to establish that plaintiff would be precluded from work "within the parameters of the adopted residual functional capacity." (R. 18).

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that he rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and thoroughly explained his reasons for giving each relevant opinion the weight that he gave it. Plaintiff's complaint that the ALJ "misinterpreted" and "misquoted" the evidence essentially is asking this court to re-weigh that evidence and arrive at a different conclusion. However, this court's task is not to conduct a *de novo* review nor to re-weigh the evidence; rather, review is limited to determining whether the ALJ's decision is supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court is satisfied that the ALJ's evaluation of the medical evidence in this case is so supported.

Having concluded that the ALJ properly evaluated the medical evidence, the court also is satisfied that the ALJ's residual functional capacity finding likewise is supported by substantial evidence as outlined in the decision, and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's limitations that were supported by the objective medical evidence.

Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff can perform her past relevant work as a cashier and inspector/hand packager constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled at step 4 of the sequential evaluation process.[9]

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Gary H. Simone, Esq.
Rishor Simone
101 East Diamond Street
Suite 208
Butler, PA 16001

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

---

[9] Having determined that the ALJ's finding of not disabled at step 4 of the sequential evaluation process is supported by substantial evidence, the court need not proceed to consider plaintiff's argument that she should have been found to be disabled at step 5. See 20 C.F.R. §404.1520; Barnhart v. Thomas, 540 U.S. 20 (2003)(if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further).